UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK EDWARD LEE,

      Petitioner,

                                         Case No. 1:08-CV-983

v.                                               (Criminal Case No. 1:04-CR-261)

UNITED STATES OF AMERICA,                HON. GORDON J. QUIST

      Respondent.
_____/

## OPINION

On March 10, 2005, Petitioner was convicted by a jury of his peers of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This Court sentenced Petitioner to 10 years' imprisonment followed by 3 years' supervised release. Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The Court must promptly undertake a preliminary review of the motion to determine whether it plainly appears from the motion, attached exhibits and record of prior proceedings that Petitioner is not entitled to relief. Rule 4, Rules Governing § 2255 Cases. If so, the Court shall order its summary dismissal. *Id.* Rule 4 requires dismissal of petitions that raise legally frivolous claims or contain palpably incredible or false allegations. *See Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999) (applying Rule 4 to petition filed under 28 U.S.C. § 2254). After conducting the review required by Rule 4, the Court concludes Petitioner is not entitled to relief.

**I.    Facts and Procedural History**

Petitioner was arrested by the Battle Creek police on January 6, 2004, after an argument

with his girlfriend in which he beat her repeatedly. Petitioner's girlfriend called 911 during the beating, but Petitioner slapped the telephone out of her hand, disconnecting the call. The 911 operator testified that she heard a man verbally abusing a woman and a woman screaming. The 911 operator called the number back. (Docket no. 56 at 151.) Someone answered and the telephone line was open during the incident, permitting the operator to hear what happened over the course of the next 40 minutes. (*Id*. at 155.) The operator heard Petitioner threaten to kill the victim and the victim reply, "Just shoot me, then." (*Id*. at 154.) During the altercation, a pistol wrapped inside a purple Crown Royal bag fell from Petitioner's waist or shirt and landed on the floor. (*Id*. at 96.)

The Battle Creek police responded to the scene. Through a window, Officer Gilleylen saw the victim seated and crying while Petitioner paced. (*Id*. at 164.) Officer Dittmer knocked on the door and the victim screamed. (*Id*.) The police kicked the door in and apprehended Petitioner. (*Id*.) The victim had a cut lip and complained of pain in her head and shoulders. (*Id*. at 194.) The victim told the officers that Petitioner had a gun. (*Id*. at 165.) A search of the room revealed a pistol in a Crown Royal bag beneath a couch cushion. (*Id*.) A fingerprint was found on the pistol, but it was not detailed enough to enable analysts to identify the individual who left it. (*Id*. at 249-50.) Petitioner was wearing a bloody t-shirt. (*Id*. at 174.) The victim testified that Petitioner instructed her to exchange shirts with him. (*Id*. at 55.) The police also found blood in the bathroom sink. (Docket no. 67 at 15.)

The Battle Creek prosecutor charged Petitioner with a variety of offenses. He was detained pending trial. Those charges were dismissed on May 18, 2004, but Petitioner remained in custody pending a parole violation hearing. The Battle Creek prosecutor forwarded information regarding the case to federal officials around July 2004. (*Id*. at 23-4.) Petitioner

was indicted for violating the federal felon-in-possession statute on November 3, 2004. The U.S. Marshals took him into custody on January 5, 2005. Petitioner made his initial appearance in this Court on that date. The government moved for pretrial detention of Petitioner on January 7, 2005. (Docket no. 18 at 1-3.) Petitioner pled not guilty at his arraignment on January 7, 2005, and his detention hearing was scheduled for January 10. At that hearing, Petitioner was detained pending trial. Petitioner was tried from March 8, 2005 to March 10, 2005. He was convicted on March 10, and sentenced on August 8, 2005 to 10 years' imprisonment and 3 years' supervised release.

## II.     Standard of Review

Petitioner must demonstrate "an error of constitutional magnitude which had a substantial and injurious effect" on the proceedings, a "'fundamental defect which inherently results in a complete miscarriage of justice,' [or] an error . . . that amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1968)). His claims must be established by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.    Analysis

Petitioner's motion rests on a claim of ineffective assistance of counsel. He argues that his attorney should have moved to dismiss the indictment on the grounds that: 1) Petitioner was arrested without probable cause; 2) the government violated the Speedy Trial Act, 18 U.S.C. § 3161; and 3) the federal indictment constituted double jeopardy. Petitioner also contends that his attorney should have 4) filed a pretrial motion to suppress the gun because it was discovered through an illegal, warrantless search; 5) challenged the sufficiency of the evidence on appeal; and 6) objected to an alleged *Brady* violation at trial and subsequently argued it on appeal.

To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that his attorney's performance was, in the totality of the circumstances, unreasonable under prevailing professional norms, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984). Petitioner cannot satisfy either of these requirements. The following analysis will demonstrate that the underlying grounds for each of Petitioner's claims of ineffective assistance are meritless. His petition is therefore denied.

**A.     Probable Cause for Arrest**

Petitioner argues that his attorney's performance was deficient because he did not move to dismiss the indictment on the grounds that Petitioner was arrested without probable cause. This argument falls flat on its face. The Fourth Amendment prohibits warrantless entry into a residence unless there are exigent circumstances. *Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 1374-75 (1980). However, Petitioner was arrested in a social club, not a residence. A warrantless arrest in a public place requires only probable cause. *United States v. Watson*, 423 U.S. 411, 423-24, 96 S. Ct. 820, 827-28 (1976).

Probable cause for arrest exists if the police know of facts and circumstances, supported by reasonably trustworthy information, sufficient to warrant a prudent man's belief that the suspect committed or was committing a crime. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005). The police had probable cause to arrest Petitioner. They responded to a 911 call in which the operator thought she heard mention of a shooting and in which Petitioner threatened to kill the victim. When they arrived and knocked, the victim screamed. The victim had a cut lip, complained of pain in her head and shoulders, and told the police Petitioner had a

gun. Petitioner's t-shirt was bloody. The facts would support a prudent man's belief that Petitioner had committed multiple violent felonies. Petitioner's attorney's failure to challenge the indictment on the grounds that the police lacked probable cause for arrest was not in any way a performance deficiency; such a motion would have had no chance for success and would have been a waste of the Court's time. Under these circumstances, counsel's refusal to present such a motion was prudent.

### B. Speedy Trial Act

Petitioner's claim that his attorney should have moved to dismiss the indictment because the Speedy Trial Act was violated is also baseless. The Speedy Trial Act required Petitioner's trial begin within 70 days of his indictment or his initial appearance in federal court, whichever was later. Petitioner was indicted on November 3, 2004, and first appeared in federal court on January 5, 2005. His trial began on March 8, 2005, less than 70 days after his initial appearance.

Petitioner suggests that the date of the state court arrest is somehow relevant under the Speedy Trial Act. It isn't. Petitioner insists that "[a]n arrest triggers the running of § 3161(b) … if the arrest is for the same offense for which the accused is subsequently indicted." (Docket no. 2 at 7.) He seems to think his arrest by the Battle Creek police triggered the Speedy Trial Act. It didn't. The Battle Creek police did not arrest Petitioner for the offense for which he was subsequently indicted by a federal grand jury. The Battle Creek police arrested him for violating state law. The federal grand jury indicted him for violating federal law. The arrest by Battle Creek police and the indictment by the federal grand jury were thus for two distinct offenses, despite the fact that both offenses arose from Petitioner's conduct on January 6, 2004. It is axiomatic that "only federal arrest, as distinct from state arrest, triggers the protections of the Speedy Trial Act." *United States v. Copley*, 774 F.2d 728, 730 (6th Cir. 1985).

There is an exception to this rule, however; a state arrest triggers the Act's requirements if the "state detention[] [is] merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act." *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994). Petitioner's detention by state authorities was no ruse. State authorities responded to the 911 call and arrested Petitioner. The state prosecutor filed charges against him. The case was not forwarded to federal officials until the state charges were dropped. Furthermore, the state continued to detain petitioner after those charges were dismissed because Petitioner faced a hearing for violating his parole. The state thus instigated Petitioner's arrest and had its own legitimate interest in detaining Petitioner pending his parole violation hearing even after the matter was forwarded to federal authorities. *See United States v. Jemison*, 319 F. App'x 866, 873 (6th Cir. 2009).

### C.     Double Jeopardy

Prosecution by both state and federal authorities for the same instance of unlawful conduct does not violate the double jeopardy clause of the Fifth Amendment. *Abbate v. United States*, 359 U.S. 187, 194-95, 79 S. Ct. 666, 670-71 (1959). The state and federal governments are separate sovereigns, and each may prosecute the violation of its laws. *Id.* Petitioner's argument is devoid of merit.

### D.     Admissibility of the Gun

Petitioner claims his attorney should have moved to have the gun excluded from the evidence at trial on the grounds that it was obtained through an illegal, warrantless search. A search may be conducted without a warrant in numerous situations. Police may search the immediate vicinity of the suspect after making a lawful arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969). Petitioner's gun was located in precisely such a search.

Furthermore, the search was conducted under exigent circumstances, as police were responding to a crime in progress in which they had grounds to believe the victim was in immediate danger. It was also imperative that the police immediately search the vicinity for the gun. Had they waited for a warrant, it could easily have been disposed of. Risk of danger to others and the need to prevent the destruction of evidence are well-recognized exigent circumstances that justify a warrantless search. *United States v. Purcell*, 526 F.3d 953, 960 (6th Cir. 2008).

Finally, Petitioner does not have standing to challenge the search. The social club was not his facility; it was his brother's. (Docket no. 58 at 28.) Petitioner did not live there, and numerous guests came to the facility regularly to party. Petitioner had no expectation of privacy there. *United States v. Buckner*, 717 F.2d 297, 299-300 (6th Cir. 1983).

### E.     Sufficiency of the Evidence

Petitioner contends his attorney should have challenged the sufficiency of the evidence on appeal. In analyzing this argument, the Court views the evidence in the light most favorable to the prosecution and considers whether *any* reasonable juror could have been persuaded that each element of the charge was established by the evidence beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). In this Court's judgment, a reasonable juror could have been so persuaded by the evidence.

Police responded to a 911 call in which the operator overheard a woman screaming and crying and a man verbally abusing her. (Docket no. 56 at 148.) The man threatened the woman repeatedly while she pleaded with him to stop. (*Id*. at 150.) The operator testified that she was "concern[ed] [] that the female was being severely hurt." (*Id*. at 152.) The man told the woman he was going to kill her and she replied, "Just shoot me. Just shoot me, then." The operator directed the police to the scene. When they knocked, the victim screamed. When they entered,

7

the victim told police Petitioner had a gun. She testified that it fell from his shirt or waist while he was beating her. Police found the gun under a couch cushion. This evidence was sufficient for the jury to conclude beyond a reasonable doubt that Petitioner knowingly possessed a firearm. Petitioner himself stipulated that he was a convicted felon. An agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that the pistol recovered from the scene was manufactured in Spain. Every element of the crime with which Petitioner was charged was demonstrated sufficiently for the jury to find Petitioner guilty.

### F.     Alleged *Brady* Violation

Petitioner contends the government failed to disclose exculpatory evidence in violation of his constitutional rights as explicated in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). He claims his attorney's failure to argue this on appeal rendered his assistance ineffective. Petitioner claims the government has or had a 40-minute recording of the 911 call made the evening of his arrest. The government produced only a 2-minute tape, however. The government explains this was the only tape it had, and that the rest of the conversation was either never recorded, or accidentally recycled and overwritten. Petitioner insists the missing 38 minutes of the call would exculpate him.

Petitioner's argument is inapposite. He has offered no proof that the content of the tape favors his defense; he merely asserts that it does. He has not elaborated on the nature of the supposedly favorable content or explained how it would exculpate him. Furthermore, the testimony of the victim, who was present during Petitioner's crime, and the 911 operator, who overheard the entire incident, provides no suggestion that a more complete recording of the call would exculpate Petitioner. Absent any factual basis for concluding that the tape exculpates Petitioner, the Court can only regard this unavailable evidence as "potentially exculpatory."

*California v. Trombetta*, 467 U.S. 479, 486-89, 104 S. Ct. 2528, 2533-34 (1984) (failure to preserve breath sample taken for blood-alcohol analysis was not Constitutional violation). The duty to preserve evidence is limited to evidence with an "exculpatory value that was apparent before the evidence was destroyed, and [] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489, 104 S. Ct. 2534. Petitioner has not met either element of this standard.

### IV. *Slack* Standard for a Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." For the reasons stated above, the Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claim was debatable or wrong. Thus, the Court will deny Petitioner a certificate of appealability.

### V. Conclusion

For the aforementioned reasons, Petitioner's § 2255 Motion is denied. A certificate of

9

appealability is also denied.

      A separate Order will issue.


Dated: June 11, 2009                                                           /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE